NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|   |   |
|---|---|
| THE GENERAL HOSPITAL CENTER AT PASSAIC, LEXINGTON INSURANCE COMPANY and JERI CONNOLLY, R.N.<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN CASUALTY COMPANY OF READING, PA, and CNA INSURANCE COMPANY<br><br>Defendants. | **Hon. Dennis M. Cavanaugh**<br><br>**OPINION**<br><br>Civil Action No. 04-4578(DMC) |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motions by Plaintiffs The General Hospital Center at Passaic ("The Hospital"), Lexington Insurance Company ("AIG") and Jeri Connolly, R.N. ("Nurse Connolly"), hereinafter "Plaintiffs", and Defendants American Casualty Company of Reading, PA, and CNA Insurance Company ("CNA")[1], for summary judgment, both filed on February 10, 2006. Each party asserts that it is entitled to summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. Pursuant to Rule 78 of the Federal Rules of Civil Procedure, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Plaintiffs' motion for summary judgment is granted in part and

---

[1] The parties do not dispute that "CNA" never provided insurance to Nurse Connolly. American Casualty Company of Reading, PA provided the insurance to Nurse Connolly at issue. In this Opinion, Nurse Connolly's insurer is called "CNA" to remain consistent with the parties' moving papers.

denied in part and Defendants' motion for summary judgment is granted in part and denied in part.

**I.     BACKGROUND[2]**

This case arises out of alleged medical malpractice surrounding the delivery and birth of Aaron Caraballo on February 7, 2000. It is undisputed that Aaron Carabllo was born with substantial and irreversible birth defects. Specifically, Aaron Caraballo was born with cerebral palsy with attendant severe mental and physical developmental delays of a permanent nature and as a result of this condition, he will require full time health care for the rest of his life.

In 2002, Aaron Caraballo's parents commenced a malpractice action, *Aaron Joseph Caraballo, et al. v. Salvatore Gagliano, M.D., et al.* ("The Caraballo Action"). In that suit, Plaintiffs alleged that Aaron Caraballo was injured during the course of his delivery at The General Hospital of Passaic, ("The Hospital"), while naming Salvatore Gagliano, M.D. ("Dr. Gagliano"), Nurse Yumei Cai ("Nurse Cai") and Nurse Jeri Connolly ("Nurse Connolly") as defendants. AIG insured both Nurse Connolly and Nurse Cai through its policy with The Hospital for the claims-made period effective from January 1, 2002 to January 1, 2003 with a $1,000,000 limit for each medical incident and a $3,000,000 limit in the aggregate. CNA insured Nurse Connolly for the period effective from November 1, 1999 to November 1, 2000. Under the relevant professional liability section of CNA's policy, its coverage obligation extended to those amounts which Nurse Connolly became legally obligated to pay as a result of injury or damage. This underlying action ultimately settled.

On the date of the incident, at 2:50 p.m., under Nurse Cai's care, the fetal heart rate monitor indicated the first non-reassuring tachycardi reading. Nurse Cai's shift ended at 3:00 p.m., at which time, Nurse Connolly replaced Nurse Cai. Nurse Connolly was on duty from 3:00 p.m. through

---

[2]The facts set forth in this Opinion are taken from the undisputed facts set forth in the parties' Rule 56.1 statements in their respective moving papers.

delivery at 5:56 p.m. While Nurse Connolly was on duty, there were several additional indications of abnormalities in the fetal heart rate. During this time, Nurse Connolly failed to contact the doctor and improperly administered Pitocin, a drug that increases contractions, which worsened the infant's tachycardic condition.

In preparation for the Caraballo Action, Paul D. Gatewood, M.D. submitted a report dated May 21, 2003, on behalf of the plaintiffs in which he noted that Nurse Connolly failed to recognize three episodes of abnormalities in the fetal heart rate. Prior to settlement, Dr. Gagliano, the obstetrician during the delivery, testified at his deposition that in view of the heart rate readings from 3:00 p.m. to 4:00 p.m., he probably would not have increased the Pitocin as Nurse Connolly did at 4:00 p.m. Also, Dr. Gagliano testified that he probably would have been concerned with the heart rate readings and would have contemplated delivering the baby on an emergent basis via Cesarian section. As a result of this testimony, it became clear that Nurse Connolly sustained the the majority of liability.

The underlying action was settled on August 3, 2004. Counsel read into the record a $900,000 settlement reached between AIG and the Caraballo Action plaintiffs. The settlement stated that AIG, as insurer for the Hospital and Nurses Cai and Connolly, agreed in principle to resolve all claims without admission of liability on behalf of Nurse Connolly for the total sum of $900,000. As part of that agreement, The plaintiffs voluntarily dismissed Nurse Cai as a defendant. Plaintiffs' counsel accepted the agreement that AIG's payment on the settlement would await the conclusion of the present litigation between AIG and CNA.

AIG maintains that CNA agreed to split the settlement amount and pay equal shares of the agreed sum of $900,000. CNA maintains that AIG dismissed Nurse Cai, whom CNA did not insure,

as a means to have CNA pay a greater sum than its share of the settlement. Basically, CNA argues that it was inappropriate to allocate the entire settlement amount to Nurse Connolly, whom CNA insures along with AIG and not apportion any liability to Nurse Cai, who only AIG insures. CNA refuses to pay half the $900,000 settlement amount. CNA maintains that its exposure should be less than one half of the settlement because Nurse Cai, for whom CNA is not responsible, must share in the liability with Nurse Connolly.

AIG initiated the present suit seeking judgment against CNA for half of the $900,000 settlement and defense costs. CNA maintains that it was inappropriate to allocate the entire settlement to Nurse Connolly and not apportion any liability to Nurse Cai, and as such, should not be required to pay half the settlement amount.

CNA seeks summary judgment from this Court to mitigate its liability with respect to the settlement. AIG seeks summary judgment from this Court adjudicating that CNA is obligated to pay the first $100,000 of the settlement because the settlement is subject to AIG's $100,000 self-insured retention policy. CNA disputes that it is responsible for the first $100,000 of the settlement because Nurse Connolly's Policy with CNA was intended to serve as supplementary excess insurance over the primary insurance covering Nurse Connolly through The Hospital under the AIG policy. CNA argues that the Hospital or AIG is responsible for the first $100,000 of the settlement.

## II.   STANDARD OF REVIEW

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material

fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  The moving party bears the burden of showing that there is no genuine issue of fact.  Id.  "The burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party."  Id.  The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor.  Fed. R. Civ. P. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "[U]nsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment."  Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990).  However, "[i]n determining whether there are any issues of material fact, the Court must resolve all doubts as to the existence of a material fact against the moving party and draw all reasonable inferences - including issues of credibility - in favor of the nonmoving party."  Newsome v. Admin. Office of the Courts of the State of N.J., 103 F. Supp.2d 807, 815 (D.N.J. 2000) aff'd, 51 Fed. Appx. 76 (3d Cir. 2002) (citing Watts v. Univ. of Del., 622 F.2d 47, 50 (D.N.J. 1980)).

**III.   DISCUSSION**

After carefully reviewing the record and papers submitted by both parties, that summary judgment is granted in part and denied in part as to Plaintiffs and summary judgment is granted in part and denied in part on behalf of Defendants.  In so ruling, CNA is required to pay the first $100,000 of the $900,000 settlement entered into by AIG and the Caraballo Action plaintiffs on

behalf of Nurse Connolly in the underlying medical malpractice case. The remaining $800,000 is to be paid by AIG.

Forming the basis of this lawsuit is the settlement of an underlying medical malpractice case explained above. At issue is whether Plaintiff AIG is entitled to reimbursement from another insurer, Defendant CNA, for settlement monies AIG agreed to pay on behalf of a mutually insured, Nurse Connolly. Also at issue is which insurance company, Plaintiff AIG, or Defendant CNA, is required to pay the first $100,000 of the settlement on behalf of their mutually insured, Nurse Connolly. The subject $100,000 is the amount of the self insured retention under AIG's policy with The Hospital.

This court finds that neither CNA nor AIG were obligated to have Connolly's consent to settle the matter on her behalf.

This Court finds, after evaluating the contract terms of both the AIG policy and the CNA policy, that CNA's coverage is supplemental to the $900,000 settlement entered into by AIG and the Caraballo Action plaintiffs. Further, AIG's policy with the Hospital includes a self-insured retention (SIR) of the first $100,000 per medical incident and as such, AIG is not responsible for that amount. As a result, Nurse Connolly's supplemental insurance with CNA is triggered and CNA is responsible for paying the first $100,000 of the Caraballo Action settlement.

New Jersey law mandates that insurance policies be interpreted according to their plain language. See Stewart Title Guaranty Co. V. Greenlands Realty, L.L.C. 58 F. Supp.2d 370 (D.N.J. 1999). As a result of the settlement agreement between AIG and the Caraballo Action plaintiffs, AIG is obligated to pay the settlement it agreed to on behalf of Nurse Connolly, within its policy

terms. The following section of the AIG policy is relevant:

> <u>THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY</u>
>     (a) Healthcare Professional Liability
>     Self-Insured Retention (per medical incident) <u>$100,000</u>
>     (b) Healthcare General Liability
>     Self-Insured Retention (per occurrence) <u>$100,000</u>
> V. SELF-INSURED RETENTION
>     A.    The First Named Insured shall be responsible for the Self-Insured Retention amount shown above. Expenses incurred by the First Named Insured in investigating and defending claims and suits are included within the Self-Insured Retention. The Self-Insured Retention applies separately to each medical incident and occurrence to which these Coverage parts apply and shall not be insured against without our written consent.
>     B.    All claims arising from a single medical incident or occurrence or continuous, related or repeated medical incidents or occurrences shall be subject to one Self-Insured Retention amount...
>     C.    We shall pay damages in excess of the Self-Insured Retention stated above. The first named insured is obligated to pay and is responsible for payment of amounts within the Self-Insured Retention.[3]

The Nurse's Policy with CNA according to its express terms, is excess of other insured claims that Nurse Connolly is subject to. The first $100,000 is not insured under the AIG policy and as such, Nurse Connolly's supplemental insurance takes effect. Specifically, Nurse Connolly's policy reads:

> Any loss resulting from any claim insured under any other insurance policy or risk transfer instrument, including, but not limited to self-insured retentions, deductibles, or other alternative arrangements,

---

[3] Declarations of Thomas J. Judge, Endorsement No. 3.

> which applies to this loss, shall be paid first by those instruments, policies, or other arrangements. **This insurance will not serve as primary insurance where there is other applicable insurance**. It is the intent of this policy to apply only to loss which is more than the total limit of all deductibles, limits of liability, self-insured amounts or other valid and collectible insurance or risk transfer arrangements, whether primary, contributory, excess, contingent or otherwise. **This insurance will not contribute with any other applicable insurance**. In no event will we pay more than our limit of liability.[4]

From the plain meaning of the above section of the policy, Nurse Connolly's contract with CNA is intended to supplement her insurance policy with AIG through the Hospital's policy. Specifically, the above policy terms show that the CNA policy is excess over retentions and deductions provided for in such insurance. The $900,000 settlement agreed upon by AIG and the Caraballo Action plaintiffs does not exceed the limits of insurance to Nurse Connolly under the AIG policy, but the AIG policy does not insure the first $100,000 of the settlement.

However, and importantly, Plaintiffs are correct in their assertion that the first $100,000 of the Caraballo Action settlement does not constitute an insured claim under the CNA policy.[5] The first $100,000 is the self-insured retention under the AIG policy, and thus, is not insured by AIG. Since the CNA policy is meant to supplement the AIG policy, CNA must pay the remainder of the amount not insured by AIG.

Defendants are misguided as they assert that AIG did not have the right to settle the underlying medical malpractice action and since they settled the case, that they acted in bad faith.

---

[4]Defendants' Statement of Facts, ¶10, Nurse's Policy, Common Policy Conditions ¶ VIII, Other Insurance and Risk Transfer Arrangements, Exhibit 1 of Thomas J. Judge's Declarations. Additionally, Pl.'s Statement of Facts, ¶ 7 (emphasis added).

[5]Pl. Brief, p. 62.

Rather, Plaintiffs correctly point out that the right to control settlements is reserved to the insurer itself and is an "important and significant" provision of the policy contract. See Fireman's Fund Ins. Co. v. Security Ins. Co. of Hartford, 72 N.J. 63, 71 (1976). Plaintiff AIG was completely within its rights to settle on behalf of Nurse Connolly.

Further, AIG's agreement to make a payment on behalf of Nurse Connolly does not create a legal obligation for Nurse Connolly to pay, rather it creates an obligation for AIG to pay the agreed upon amount according to its contractual terms.

Defendants are obligated to pay the first $100,000 of the settlement amount and Plaintiff AIG is obligated to pay the remainder of the settlement amount, $800,000.

**IV.   CONCLUSION**

For the reasons stated, it is the finding of this Court that Plaintiffs' motion for summary judgment is **granted in part and denied in part** and Defendants' motion for summary judgment is **granted in part and denied in part**.  An appropriate Order accompanies this Opinion.

 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date: September  24 , 2007
Orig.: Clerk
cc: Counsel of Record
    The Honorable Mark Falk, U.S.M.J.
    File